PHILLIP A. TALBERT
United States Attorney
AUDREY B. HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DAWID TOMASZ WOŹNIAK TO THE REPUBLIC OF POLAND | CASE NO. 2:22-MJ-00028-KJN |
| | **UNITED STATES' MEMORANDUM IN SUPPORT OF CERTIFICATION OF EXTRADITION** |
| | DATE: June 23, 2022 TIME: 9:00 a.m. |
| | Hon. Kendall J. Newman |

**TABLE OF CONTENTS**

I.    STATEMENT OF RELEVANT FACTS ...................................................................................1

II.   LEGAL FRAMEWORK AND ARGUMENT ........................................................................2

    A.    The Court's Limited Role at the Extradition Hearing ........................................2

    B.    The Requirements for Certification Are Satisfied in this Case............................4

        1.    This Court Has Authority Over the Proceedings .................................4

        2.    This Court Has Jurisdiction Over Woźniak ..........................................5

        3.    The Relevant Treaty Is in Full Force and Effect...................................5

        4.    The Charged Crime is Covered by the Treaty .......................................6

        5.    The Extradition Request Establishes Probable Cause that Woźniak Committed the Offense ........................................................................10

    C.    Extraditions Follow Unique Procedures .............................................................14

        1.    An Extradition Hearing Is Not a Criminal Proceeding.......................14

        2.    Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses ........................................................................15

        3.    The Fugitive's Right to Present Evidence Is Very Limited..................16

        4.    Rule of Non-Inquiry.............................................................................17

III.  CONCLUSION...................................................................................................................18

**Cases**                                                                                                    **Page(s)**

*Ahmad v. Wigen,*
    726 F. Supp. 389 (E.D.N.Y. 1989)................................................................................. 4

*Artukovic v. Rison,*
    784 F.2d 1354 (9th Cir. 1986) ..................................................................................... 15

*Austin v. Healey,*
    5 F.3d 598 (2d Cir. 1993)............................................................................................. 5

*Balzan v. United States,*
    702 F.3d 220 (5th Cir. 2012) ...................................................................................... 14

*Barapind v. Enomoto,*
    400 F.3d 744 (9th Cir. 2005) ...................................................................................... 16

*Benson v. McMahon,*
    127 U.S. 457 (1888) ..................................................................................................... 11

*Bingham v. Bradley,*
    241 U.S. 511 (1916) ................................................................................................ 15, 17

*Bovio v. United States,*
    989 F.2d 255 (7th Cir. 1993) .................................................................................. 15, 16

*Charlton v. Kelly,*
    229 U.S. 447 (1913) ................................................................................................ 16, 17

*Clarey v. Gregg,*
    138 F.3d 764 (9th Cir. 1998) ......................................................................................... 7

*Collins v. Loisel,*
    259 U.S. 309 (1922) ............................................................................................... passim

*Cucuzzella v. Keliikoa,*
    638 F.2d 105 (9th Cir. 1981) ...................................................................................... 7, 9

*DeVazquez v. DiLeonardi,*
    125 F.3d 1110 (7th Cir. 1997) .................................................................................... 17

*El Al Israel Airlines, Ltd. v. Tseng,*
    525 U.S. 155 (1999) ....................................................................................................... 4

*Escobedo v. United States,*
    623 F.2d 1098 (5th Cir. 1980) ................................................................................. 3, 17

*Factor v. Laubenheimer,*
    290 U.S. 276 (1933) ................................................................................................ 4

*Fernandez v. Phillips,*
    268 U.S. 311 (1925) ............................................................................................. 4, 11

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) .............................................................................................. 10

*Glucksman v. Henkel,*
    221 U.S. 508 (1911) .............................................................................................. 15

*Grin v. Shine,*
    187 U.S. 181 (1902) ............................................................................................. 4, 7

*Haxhiaj v. Hackman,*
    528 F.3d 282 (4th Cir. 2008) ............................................................................. 11, 15

*Hooker v. Klein,*
    573 F.2d 1360 (9th Cir. 1978) ............................................................................... 17

*Hoxha v. Levi,*
    465 F.3d 554 (3d Cir. 2006) ..................................................................................... 6

*Hu Yau-Leung v. Soscia,*
    649 F.2d 914 (2d Cir. 1981) ................................................................................... 10

*In re Chan Kam-Shu,*
    477 F.2d 333 (5th Cir. 1973) .................................................................................... 6

*In re Extradition of Garcia,*
    825 F. Supp. 2d (S.D. Tex. 2011) ...................................................................... 3, 15

*In re Extradition of Howard,*
    996 F.2d 1320 (1st Cir. 1993) ................................................................................... 5

*In re Extradition of Manzi,*
    888 F.2d 204 (1st Cir. 1989) ..................................................................................... 7

*In re Extradition of Nezirovic,*
    2013 WL 5202420 (W.D. Va. Sept. 16, 2013) ......................................................... 4

*In re Extradition of Noeller,*
    2017 WL 6462358 (N.D. Ill. Dec. 19, 2017) ......................................................... 17

*In re Kaine,*
    55 U.S. 103 (1852) ................................................................................................ 17

*In re Pazienza,*
  619 F. Supp. 611 (S.D.N.Y. 1985) ............................................................. 5

*Jimenez v. Aristeguieta,*
  311 F.2d 547 (5th Cir. 1962) ................................................................... 5

*Kelly v. Griffin,*
  241 U.S. 6 (1916) ................................................................................... 7

*Kolovrat v. Oregon,*
  366 U.S. 187 (1961) ............................................................................... 6

*Koskotas v. Roche,*
  931 F.2d (1st Cir. 1991) ......................................................................... 17

*Lo Duca v. United States,*
  93 F.3d 1100 (2d Cir. 1996) ................................................................... 3

*Martin v. Warden,*
  993 F.2d 824 (11th Cir. 1993) ........................................................ 2, 3, 15, 17

*Martinez v. United States,*
  828 F.3d 451 (6th Cir. 2016) ................................................................. 7

*Matter of Extradition of Lebiedzinski,*
  2021 WL 5232735 (N.D. Ill. Nov. 10, 2021) ....................................... 9-10

*McDonald v. Burrows,*
  731 F.2d 294 (5th Cir. 1984) ................................................................. 15

*McElvy v. Civiletti,*
  523 F. Supp. 42 (S.D. Fla. 1981) ........................................................... 7

*Neely v. Henkel,*
  180 U.S. 109 (1901) ............................................................................. 14

*Oen Yin-Choy v. Robinson,*
  858 F.2d 1400 (9th Cir. 1988) ............................................................... 7

*Ordinola v. Hackman,*
  478 F.3d 588 (4th Cir.) .................................................................. 3, 4, 15, 16

*O'Brien v. Rozman,*
  554 F.2d 780 (6th Cir. 1977) ................................................................. 15

*Pettit v. Walshe,*
  194 U.S. 205 (1904) ............................................................................. 5

*Prasoprat v. Benov*,
    421 F.3d 1009 (9th Cir. 2005) ................................................................. 2, 17

*Quinn v. Robinson*,
    783 F.2d 776 (9th Cir. 1986) ............................................................. 3, 10, 11

*Quintanilla v. United States*,
    582 F. App'x 412 (5th Cir. 2014) ............................................................... 7

*Rice v. Ames*,
    180 U.S. 371 (1901) ................................................................................. 15

*Roper v. Simmons*,
    543 U.S. 551 (2005) ................................................................................... 9

*Sabatier v. Dabrowski*,
    586 F.2d 866 (1st Cir. 1978) .................................................................... 15

*Santos v. Thomas*,
    830 F.3d 987 (9th Cir. 2016) .................................................... 2, 14, 16, 17

*Sayne v. Shipley*,
    418 F.2d 679 (5th Cir. 1969) .................................................................... 15

*Shapiro v. Ferrandina*,
    478 F.2d 894 (2d Cir. 1973) ...................................................................... 3

*Simmons v. Braun*,
    627 F.2d 635 (2d Cir. 1980) .................................................................... 15

*Then v. Melendez*,
    92 F.3d 851 (9th Cir. 1996) ....................................................................... 6

*United States ex rel Saroop v. Garcia*,
    109 F.3d 165 (3d Cir. 1997) ...................................................................... 6

*United States v. Kin-Hong*
    110 F.3d 103 (1st Cir. 1997) ...................................................................... 3

*United States v. Knotek*,
    925 F.3d 1118 (9th Cir. 2019) .................................................................... 7

*United States v. Risner*,
    2019 WL 6118377 (N.D. Tex. Nov. 18, 2019) .......................................... 5

*Zanazanian v. United States*,
    729 F.2d 624 (9th Cir. 1984) .................................................................... 15

**Statutes**

18 U.S.C § 113 ................................................................................................... 8

18 U.S.C. § 1111 .............................................................................................. 8, 9

18 U.S.C. § 1384 ................................................................................................ 10

18 U.S.C. § 3184 ........................................................................................... passim

18 U.S.C. § 5032 ............................................................................................. 8, 9

18 U.S.C. § 3184 ........................................................................................... passim

18 U.S.C. § 3186 ............................................................................................ 2, 17

Cal. Penal Code § 187 .......................................................................................... 9

Cal. Penal Code § 188 .......................................................................................... 9

Cal. Penal Code § 189 .......................................................................................... 8

Cal. Penal Code § 190 .......................................................................................... 9

Cal. Welf. & Inst. Code § 602 ............................................................................ 10

Cal. Welf. & Inst. Code § 707 ............................................................................ 10

Crim. Code of Poland, Article 156 § 1 ................................................................. 8

Crim. Code of Poland, Article 156 § 2 ............................................................. 8, 9

Crim. Code of Poland, Article 156 § 3 ........................................................ 1, 7, 8, 9

**Rules**

Fed. R. Crim. P. 1 ............................................................................................... 14

Fed. R. Evid. 1101 .............................................................................................. 14

Local R. 302(b)(8) ................................................................................................ 5

## I.   STATEMENT OF RELEVANT FACTS

The Republic of Poland has submitted a request, through the diplomatic channel, to extradite Woźniak for prosecution on one count of causing grievous bodily harm resulting in death, in violation of Article 156 § 3 of the Criminal Code of Poland for his part in an attack that he is alleged to have committed against Andrzej Malinowski.  According to the evidence Poland has submitted, the request is based upon the following facts:

On December 24, 2007, Woźniak and his friends, Marek Szymanski, Arkadiusz Bronislawski, Piotr Chmielewski, and Mariusz Kozlowski, drove to Grudusk, Poland, in two vehicles without any known purpose.  They had been drinking alcohol earlier in the day.  They stopped in a parking lot near a shopping center in Grudusk around 11:00 p.m.  Woźniak, who was wearing a short sleeve t-shirt, got out of the car in which he was riding, took out a wooden stick from the trunk, and approached another car in which an unidentified man was sitting. Woźniak opened the man's car door and began dragging him out of the car.  Kozlowski intervened and pulled Woźniak away from the man.

Woźniak, still holding the wooden stick, walked towards a stadium located on a nearby street. His friend Szymanski followed him while the others waited by the cars. Woźniak and Szymanski approached Szymon Rutkowski, Katarzyna Grodecka, and Karolina Rudnicka, who were standing outside of Ewelina Rudnicka's house waiting for her.  Woźniak and Szymanski approached Rutkowski. Woźniak hit Rutkowski in the back with the wooden stick, causing Rutkowski to bend over and shield his face with his hands.  Woźniak continued to hit Rutkowski with the wooden stick while Szymanski repeatedly punched and kicked him.

While Woźniak and Szymanski were beating Rutkowski, Andrzej Malinowski walked by and asked Woźniak and Szymanski what they wanted from Rutkowski.  Woźniak and Szymanski then approached Malinowski and started hitting him.  Woźniak hit Malinowski in the head with the wooden stick while Szymanski punched and kicked Malinowski.  Malinowski fell onto his back.  Woźniak and Szymanski ran back to the parking lot where their friends were waiting.  Woźniak got into Kozlowski's car, Szymanski got into Chmielewski's car, and they all drove away from Grudusk.  Rutkowski and Karolina Rudnicka both witnessed the assault against Malinowski and provided statements to the police describing the attack.

Two individuals helped Malinowski walk home. He then went to the hospital, where the doctors discovered that he had sustained an extensive left side subdural hematoma over the entire hemisphere of the brain, among other serious injuries. Malinowski died approximately one week later, on January 1, 2008. According to a medical expert, the direct cause of death was an acute breathing and circulation failure resulting from the injuries to Malinowski's skull and brain. Those injuries had led to intracranial hypertension syndrome and swelling of the brain, which caused general encephalomalacia and irreversible destruction of the nervous centers necessary to live.

The shape and location of the head injury indicated that they occurred as a consequence of a single blow with a hand, oblong, oval object. No trace evidence originating from Woźniak were found on the stick, but multiple witnesses stated that it was Woźniak, wearing a short sleeve t-shirt, who held or used the stick.

Woźniak was sixteen years old at the time of the incident. He was initially detained as a juvenile, but fled Poland soon after this initial detention. A judicial determination was made in accordance with the Polish Penal Code to prosecute Woźniak as an adult, given Woźniak's personal history.

Woźniak was initially identified by witnesses based on a photograph of him as a child; subsequently, Polish law enforcement assembled a four-photo demonstrative, from which Woźniak was identified by witnesses Szymanski and Kozlowski, among others. Woźniak was also identified by the two police officers who interviewed Woźniak after the incident. A warrant for Woźniak's arrest was issued on March 3, 2009, by the Regional Court in Ciechanów, Poland.

## II.     LEGAL FRAMEWORK AND ARGUMENT

### A.     The Court's Limited Role at the Extradition Hearing

Extradition is primarily an executive function with a specially defined role for a judicial officer, whom statute authorizes to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. §§ 3184, 3186; *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016); *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005); *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993); *Lo Duca v. United States*, 93 F.3d 1100, 1110 n.10 (2d Cir. 1996). The Secretary, and not the court, makes the decision regarding whether the fugitive

ultimately should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980) ("The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs.").

The extradition judge has the limited duty of determining the request's sufficiency under the applicable treaty provisions. *Martin*, 993 F.2d at 828-29. That judicial function is carried out by conducting a hearing pursuant to 18 U.S.C. § 3184. "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the Court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification—as defined in the Treaty, statutes, and case law—have been established. *Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)); *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 815 (S.D. Tex. 2011). If the fugitive offers any explanatory evidence, the Court should rule on its admissibility. Once the evidentiary record is complete, the Court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894, 905–06 (2d Cir. 1973), *cert. dismissed*, 414 U.S. 884 (1973). If the Court finds that the requirements for certification have been met, the court must furnish the certification to the Secretary, together with a copy of the evidence and a transcript of any testimony presented at the hearing and must commit the fugitive to the custody of the United States Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184; *Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir.), *cert. denied*, 128 S. Ct. 373 (2007).

In fulfilling its function under Section 3184, the judicial officer should construe the Treaty liberally to effect its purpose, namely, the surrender of fugitives to the requesting country. *See Factor v. Laubenheimer*, 290 U.S. 276, 303 (1933) ("Extradition treaties are to be liberally, not strictly,

construed."); *In re Extradition of Nezirovic*, No. CIV.A. 7:12MC39, 2013 WL 5202420, at *5 (W.D. Va. Sept. 16, 2013) ("Treaties are construed liberally to favor the obligation to surrender fugitives.") (citation omitted). As the Supreme Court explained in *Factor*:

> In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.

290 U.S. at 293. To carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Id.* at 298. The United States does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

A Court should afford great weight to statements by the U.S. Department of State regarding treaty interpretation. *See El Al Israel Airlines*, *Ltd. v. Tseng*, 525 U.S. 155, 168 (1999); *Ahmad v. Wigen*, 726 F. Supp. 389, 402 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("The State Department's view deserves deference, unless it represents a substantial departure from national or international norms.").

### B. The Requirements for Certification Are Satisfied in this Case

An extradition certification is in order where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crime for which extradition is requested is covered by the applicable treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. 18 U.S.C. § 3184; *see Fernandez*, 268 U.S. at 312; *Ordinola*, 478 F.3d at 608 ("In practice, this is generally . . . a limited hearing to determine whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge."). Each of the elements has been met in this case.

#### 1. This Court Has Authority Over the Proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge

of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. As such, the judicial officer conducting the extradition hearing that Section 3184 prescribes does not exercise "any part of the judicial power of the United States" but, rather, acts in a "non-institutional capacity by virtue of a special authority." *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (internal quotation marks and citations omitted). Consequently, both magistrate judges and district judges may render a "certification" under Section 3184. *Jimenez v. Aristeguieta*, 311 F.2d 547, 553–55 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing); *Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993) (magistrate judge had authorization to conduct extradition hearing without specific delegation of authority); *United States v. Risner*, No. 3:18-MJ-765-BN, 2019 WL 6118377, at *2 (N.D. Tex. Nov. 18, 2019) (citations omitted).

Here, Local Rule 302(b)(8) of the United States District Court for the Eastern District of California delegates to magistrate judges the authority to handle extradition matters. Accordingly, this Court is authorized to conduct this extradition proceeding.

## 2. **This Court Has Jurisdiction Over Woźniak**

A court has jurisdiction over a fugitive found within its jurisdictional boundaries. 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged."); *Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *In re Pazienza*, 619 F. Supp. 611, 616 (S.D.N.Y. 1985). Woźniak was found in this District when he was arrested on the extradition warrant in this case. Because Woźniak was "found within [this] jurisdiction," the personal jurisdictional requirement of 18 U.S.C. § 3184 is met.

## 3. **The Relevant Treaty Is in Full Force and Effect**

There is an extradition treaty in force between the United States and Poland, the Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., July 10, 1996, S. Treaty Doc. No. 105-14 (1997) and the Agreement Between the United States of America and the Republic of Poland on the application of the Extradition Treaty Between the United States of America and the Republic of Poland signed 10 July 1996, U.S.-Pol., June 9, 2006, S. Treaty Doc. No. 109-14 (2006).

/ / /

The extradition statute, 18 U.S.C. § 3184, provides for extradition where a treaty or convention is in force between the requesting state and the United States. *See, e.g., In re Chan Kam-Shu*, 477 F.2d 333 (5th Cir. 1973), *cert. denied*, 414 U.S. 847 (1973); *Hoxha v. Levi*, 465 F.3d 554, 562 (3d Cir. 2006); *United States ex rel Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997). There is an extradition treaty in full force and effect between the United States and Poland. *See* Declaration of Tom Heinemann, Attorney-Adviser in the Office of the Legal Adviser for the U.S. Department of State (the "Heinemann Declaration," ECF No. 1 pg. 127[1] at ¶ 2.

The State Department's conclusion that the Treaty is in full force and effect, as expressed in this declaration, is entitled to deference. *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight"); *Then v. Melendez,* 92 F.3d 851, 853 (9th Cir. 1996).

### 4. The Charged Crime is Covered by the Treaty

Extradition treaties create an obligation for the United States to surrender fugitives under particular circumstances. Here, the Treaty provides for the return of "persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense." Treaty Art. 1(1). The Treaty defines extraditable offenses to include an offense "punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty." Treaty Art. 2(1); ECF No. 1 pg. 138. An offense an extraditable offense "whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology." Treaty Art. 2(2)(a); ECF No. 1 pg. 138. Poland's crime of causing grievous bodily harm resulting in death is an extraditable offense. Heinemann Decl. ¶ 5 (stating that Article 2 of the Treaty covers the offense for which Poland seeks extradition); ECF 1 pg. 128.

In assessing whether the Treaty covers the offense for which Poland seeks extradition, the Court should examine the description of criminal conduct that Poland has provided and decide whether that conduct would be criminal under U.S. federal law, the law of the state in which the hearing is held, or

---

[1] The United States filed Poland's extradition request on the docket at ECF 1. All references to page numbers in this brief will be to the ECF-generated pagination at the top header of that document.

the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-108 (9th Cir. 1981); *In re Extradition of Manzi*, 888 F.2d 204, 207 (1st Cir. 1989); *Quintanilla v. United States*, 582 F. App'x 412, 414 (5th Cir. 2014). Because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers[,]" *Grin*, 187 U.S. at 184, the Court should "approach challenges to extradition with a view towards finding the offenses within the treaty." *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981). *See also Martinez v. United States*, 828 F. 3d 451, 463 (6th Cir. 2016) (*en banc*) ("The point of an extradition treaty after all is to facilitate extradition . . . .").

A requesting country is not obliged to establish that its crimes are identical to ours. *Kelly v. Griffin*, 241 U.S. 6, 15 (1916). In *Collins v. Loisel*, the Supreme Court held that dual criminality exists "if the particular act charged is criminal in both jurisdictions," even if the name of the offense or the scope of the liability differs in the two countries. 259 U.S. 309, 312 (1922); *United States v. Knotek*, 925 F.3d 1118, 1131 (9th Cir. 2019) ("There is no need for the scope of criminal liability to be coextensive or the same in both the United States and requesting country.") (internal quotations and citation omitted); *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) ("The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical."); *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988) (citing *Emami v. U.S. Dist. Court for N. Dist.,* 834 F.2d 1444, 1450 (9th Cir. 1987) ("[T]he name by which the crime is described in the two countries need not be the same, nor does the scope of liability for the crime need to be the same.").

The description of Woźniak's conduct in the documents Poland has provided satisfies the Treaty's dual criminality requirement. Poland requests Woźniak's extradition for prosecution for the offense of causing grievous bodily harm resulting in death, in violation of Article 156 § 3 of the Criminal Code of Poland, for allegedly hitting the victim in the head with a wooden stick and causing his death. Under Polish law, this offense carries a potential penalty exceeding one year of imprisonment. ECF 1 pg. 48-49 (Article 156 § 3 stating, "[T]the perpetrator is subject to a penalty of imprisonment for a period from 2 to 12 years.")

///

///

The same alleged conduct, if committed in the United States, would be criminal and punishable by more than one year of imprisonment under statutes including 18 U.S.C. § 1111 (murder)[2], Cal. Penal Code §§ 187, 189 (murder), or 18 U.S.C § 113(3) (assault with a deadly weapon), coupled with 18 U.S.C. § 5032 (a juvenile may be prosecuted as an adult for such violations if he was 16 years old at the time of the offense).

Polish Penal Code Article 156 § 1 provides that a person who causes grave detriment to health in the form of (1) deprivation of a person of sight, hearing, speech, ability to reproduce, or (2) other grave handicap, grave incurable or long-lasting illness, illness posing a real threat to life, enduring incapability to work in profession or enduring, material disfiguration or deformation of the body, is subject to a penalty of imprisonment for a term from one year up to 10 years. ECF No. 1 pg. 48-49.

Polish Penal Code Article 156 § 3 provides, "If the aftermath of the act specified in § 1 is death of a person, the perpetrator is subject to a penalty of imprisonment for a period from 2 to 12 years." ECF No. 1 pg. 48.

The maximum penalty for this offense under the Polish Criminal Code is more than one year imprisonment. Polish Penal Code Article 156 § 3 states, "[T]the perpetrator is subject to a penalty of imprisonment for a period from 2 to 12 years." ECF No. 1 pg. 48-49.

Woźniak was 16 years old at the time of the assault and killing. The Polish Family Court applied Article 10 § 2 and made the decision to prosecute Woźniak as an adult based on his personal history. ECF No. 1 pg. 36. Because Woźniak was 16 at the time of the alleged crime, however, Article 10 of the Polish Criminal Code reduces the severity of Woźniak's potential sentence. Article 10 § 2 of the Polish Penal Code provides that "[j]uveniles over 15, who perpetrate a prohibited act specified in . . . [A]rticle 156 [§] 1 or 3, . . ., may be responsible on the principles set forth in the present Code, if circumstances of the case and the degree of development of the perpetrator, his traits and personal conditions are supportive of the same, and in particular if previously applied educational or correctional measures have

---

[2] "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . willful, deliberate, malicious, and premeditated killing. . . is murder in the first degree. Any other murder is murder in the second degree." 18 U.S.C. § 1111(a). First- and second-degree murder carry potential penalties of death and life imprisonment, respectively. *See id.* § 1111(b).

proven ineffective." ECF No. 1 pg. 41. Article 10 § 3 clarifies that for a case referred to in Section 2, the sentence imposed may not exceed two-thirds of the maximum statutory threat of punishment for the offense attributed to the perpetrator; the court may also apply extraordinary leniency. ECF No. 1 pg. 41. Thus, the maximum penalty of eight years' imprisonment is covered by Treaty Article 2.

The same alleged conduct, or unjustified assault and killing, if committed in the United States, would be criminal and punishable by more than one year of imprisonment under statutes including 18 U.S.C. § 1111 (murder)[3] and Cal. Penal Code §§ 187, 189 (murder).[4] *See Cucuzzella*, 638 F.2d at 107 (In assessing the duality of the crimes charged in an extradition proceeding, the Court may refer to either the federal *or* state law of the United States.)

For a 16-year-old charged with murder in violation of 18 U.S.C. § 1111, there is a clear avenue in 18 U.S.C. § 5032 (in 2007 and today) for that individual to be prosecuted, upon a motion of transfer by the Attorney General, in the appropriate district court of the United States for criminal prosecution, whereby that individual could be subject to the full sentencing range available to an adult offender.[5] "That is enough to satisfy the requirements of § 3184 and the Extradition Treaty." *Matter of Extradition of Lebiedzinski*, No. 20 CR 842, 2021 WL 5232735, at *2-4 (N.D. Ill. Nov. 10, 2021) (finding extraditable to Poland a fugitive who was 15 years old at the time of the murder, and noting that the transfer statute alone was sufficient for dual criminality purposes and the court need not inquire whether the motion would have been sought or granted had the fugitive been charged here when he was a

---

[3] "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . willful, deliberate, malicious, and premeditated killing. . . is murder in the first degree. Any other murder is murder in the second degree." 18 U.S.C. § 1111(a). First- and second-degree murder carry potential penalties of death and life imprisonment, respectively. 18 U.S.C. § 1111(b).

[4] Cal. Penal Code § 187(a) provides, "Murder is the unlawful killing of a human being . . . with malice aforethought." Cal. Penal Code § 188(a) provides, "For purposes of Section 187, malice may be express or implied. (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Cal. Penal Code § 188 provides, "(a) All murder that is perpetrated . . . by any other kind of willful, deliberate, and premeditated killing, or that is committed in the perpetration of, or attempt to perpetrate, . . . mayhem, . . . . is murder of the first degree. (b) All other kinds of murders are of the second degree." First-degree murder carries a potential penalty of twenty-five years' to life imprisonment. *See* Cal. Penal Code § 190(a). Second-degree murder carries a potential penalty of fifteen years' to life imprisonment. *See id*.

[5] Except the death penalty, as provided by *Roper v. Simmons*, 543 U.S. 551 (2005).

juvenile); *see also Hu Yau-Leung v. Soscia,* 649 F.2d 914, 919 (2d Cir. 1981) ("[T]he requirements of [the Treaty's "felony" dual criminality requirement is] satisfied by the fact that, even considering [that the fugitive committed the crime when he was 16], he could have been charged with, convicted of, and sentenced for a felony under New York law.")

The same analysis is also present under California law.  In 2007 (which is when the assault and killing in this case occurred), a 16-year-old charged with murder in the state of California could have been transferred to the court of criminal jurisdiction, prosecuted under the criminal laws of California, and subject to the sentences provided for adult offenders.  Cal. Welf. & Inst. Code § 602(b), in effect in Dec. 2007.  The same is true today.  Cal. Welf. & Inst. Code § 707(c) (effective Jan. 1, 2019 to present).  Thus, just as under federal law, under California law, a 16-year-old charged with and convicted of murder could be punished by a term of imprisonment of more than a year, which satisfies the requirements of the Extradition Treaty.

The statute of limitations on the charged crime in Poland will expire on December 26, 2027.  ECF No. 1 pg. 117.

Accordingly, the Treaty covers the offense for which Poland seeks extradition.

5.    **The Extradition Request Establishes Probable Cause that Woźniak Committed the Offense**

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause.  18 U.S.C. § 1384.  The inquiry is whether probable cause exists to believe that the person before the Court committed the alleged violation of the requesting country's law.  *Quinn,* 783 F.2d at 791.

Probable cause exists if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused.  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

But in the extradition context, the extradition judge's probable cause determination is "not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn*, 783 F.2d at 791 (*quoting Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981)); *Haxhiaj v. Hackman*, 528 F.3d 282, 287 (4th Cir. 2008)

("The extradition hearing is not to serve as a full-blown trial and serves simply to permit a limited inquiry into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country.") (internal quotation marks omitted).  As the Supreme Court has stated:

> [T]he proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining and committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez*, 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict.").

Here, the materials in the extradition request establishes probable cause to believe that Woźniak committed the offense for which Poland seeks extradition.  The extradition request includes:

- a certified copy of the charging document (ECF No. 1 pg. 124)

- a certified statement from the Polish prosecutor, which summarize the evidence in the prosecution casefile (ECF No. 1 pg. 34-39), including

  - a statement by witness Szymon Rutkowski, who stated that "he had come to Grudusk on 24th December 2007 more or less at 23:47 hours. . . When he was standing in front of [his friend's] house, two men ran over to him.  One of them was wearing a light short-sleeve shirt. . . . Szymon Rutkowski was immediately hit with a wooden stick by one of them, was beaten with hands and kicked by the other perpetrator. . . .Andrezj Malinowski, who was passing by, saw this and said to the attackers "what do you want from him?"  Then the two men who had assaulted Szymon Rutkowski ran over to Andrezj Malinowski and started hitting him with the wooden stick in his head and kicking him all over his body.  During the beating Andrzej Malinowski fell down.  Then the perpetrators ran away. (ECF No. 1 pg. 37).

  - a statement by witness Marek Szymanski, who stated that Woźniak "had taken part in the beating of Szymon Rutkowski, whom he was hitting with a wooden stick, and then saw him holding the wooden stick and standing above the lying man."  Later at trial, Szymanski admitted his own role in the offense, as summarized, he "stated that he was hitting Symon Rutkowski with a stick together with Dawid Tomasz Woźniak and directly afterwards saw Dawid Tomasz Woźniak holding the wooden stick ad standing above the

lying man. He explained that only Dawid Tomasz Woźniak was using the wooden stick." ECF No. 1 at pg. 37.

When Polish police were later securing additional photo identifications of Woźniak in support of the extradition request, Szymanski, positively identified Woźniak, and gave a certified statement as follows: "On the day of the incident I went with him to Grudusk. We parked the car at a shop in Grudusk. I drove with Chmielewski and Dawid Woźniak with Kozlowski. I saw how Dawid took some club out of the car and ran towards the stadium. I ran after Dawid Woźniak. I remember I saw Dawid Woźniak struggling with some guy. I ran and punched that boy in the face. He sat down on the stone wall and covered his head with his hands. Now I do not remember if Dawid Woźniak beat the boy with the club. I went up to him and asked where he is from. He replied that he was from Kamien. At that time, I saw how Dawid Woźniak runs from the first boy. As I turned around I saw a man lying and Dawid Woźniak was behind him. I do not remember if I saw that Dawid Woźniak hitting him with a wooden club. When I passed by this man, he lay motionless. I did not hit him. Only Dawid had a wooden club. At the time when the latter victim fell I did not see any other persons near him except Dawid Woźniak. I clearly saw Dawid Woźniak by the second victim." (ECF No. 1 pg. 95).

o a statement by witness Ewelina Rudnicka, who stated that when she came out of her house on the night of December 24, "she saw two men running over to Andrzej Malinowski, who had earlier reprimanded them by saying 'what are you doing, leave him alone.' The two men started beating Andrzej Malinowski. One of the attackers was [hitting] him with a baseball bat. After a blow Andrzej Malinowski fell down on the pavement and the attackers ran away. (ECF No. 1 pg. 37). At the trial of Szymanski, Rudnicka testified that she was not able to indicate which of the two men was beating Malinowski with the bat, but she added that one of the attackers was wearing a short-sleeve short. (ECF No. 1 pg. 38).

o a statement by witness Karolina Rudnicka, who stated that when she was standing next to her house on the night of December 24, two men approached her group, one wearing only a short sleeve shirt and holding a baseball bat. "The men beat up Szymon Rutkowski and then ran over to Andrzej Malinowski. The boy wearing the short-sleeve short was hitting Andrezej Malinowski with the bat in the head. After the blow, Andrzej Malinowski fell down on the pavement." At the trial of Szymanski, Rudnicka confirmed in her testimony that "the bat was held by the man dressed in the short-sleeve shirt." (ECF No. 1 pg. 38).

o a statement by witness Katarzyna Grodecka, who testified that she was going to midnight mass with the Rudnickas and Szymon Rutkowski when "two men ran over to them. One of them was wearing a short-sleeve shirt and holding a wooden stick." She ran away, but later noticed a man lying on the road. ECF No. 1 pg. 38.

o a statement by witness Mariusz Kozlowski, who stated that "he had come to Grudusk together with Dawid Tomasz Woźniak [and another individual] by car. . . . Dawid Tomasz Woźniak came out of the car and started behaving aggressively. He wanted to pull out an elderly man from another car standing at the parking place." One of the group pulled Woźniak away from the man, but Woźniak "took a wooden stick from [one of the cars] and ran in the direction of the bridge." Woźniak "was wearing just a short-sleeve shirt." Szymanski ran with Woźniak. This witness did not give information about the beatings, but stated that when Woźniak returned to the car, he "got into the car with a wooden stick, he was wearing a short-sleeve shirt." ECF No. 1 pg. 38.

o a statement by witness Piotr Chmielewski, who stated that he had gone to Grudusk with the group including Woźniak, and that Woźniak "was behaving aggressively. He was

holding a wooden stick in his hands. He ran somewhere, and Marek Szymanski ran with him." ECF No. 1 pg. 39.

- o a statement by witness Arkadiusz Bonislawski, who stated that he had gone to Grudusk with the group including Woźniak, and that "they were drinking alcohol together." This witness claimed he did not remember what happened, and that he was asleep in the car. ECF No. 1 pg. 39.

- o a statement by the medical examiner, who provided an opinion that the direct cause of Andrzej Malinowski's death was "an acute circulation and breathing failure resulting from an injury of the skull and brain. It led to intracranial hypertension syndrome and swelling of the brain and as a consequence to intracranial hypertension syndrome a few days before. The shape and the location of the superficial changes indicates that they occurred as a consequence of a single blow with a hard, oblong, oval object. This tool could be the stick the photograph of which can be found in the files of the case." ECF No. 1 pg. 39.

- o a summary of the physical evidence, namely, the 59 cm stick. ECF No. 1 pg. 39.

- a certified copy of a witness statement and photo identification of Woźniak by witness Mariusz Kozlowski, who was also present the night of the attack:

On the day of the incident I went along with him to Grudusk. Dawid Woźniak took out of my car a big stick and went somewhere. I guess Szymanski went after him. I have not seen Dawid Woźniak hitting other persons with the club. Dawid came to my car. He probably had that club. He did not tell me what happened. I remember that he was under the influence of alcohol. Earlier I saw him drinking vodka. I last saw Dawid Woźniak on the second day after the incident, when the police apprehended us. (ECF No. 1 pg. 107).

- a certified copy of a witness statement and photo identification by Wlodzimierz Woźniak, who was not an eyewitness to the crime, but did make the hearsay observation that "I know as much as all the inhabitants of Pawlow, it is that Dawid Woźniak battered the boy who died, and it was on Christmas Eve of 24/25 December 2007 . . . ." (ECF No. 1 pg. 111).

- a certified copy of a witness statement and photo identification of Woźniak by witness Wieslaw Olszewski, an officer who interrogated Woźniak on the night of the crime, and obtained admissions from Woźniak as follows:

I interrogated him in the evening and night hours . . . Dawid Woźniak admitted to participating in the battery of one of the victims, and then to participating in the beating of another victim. During the incident Woźniak had a baseball bat, by which he stroked the victims. (ECF No. 1 pg. 99).

/ / /

/ / /

/ / /

- a certified copy of a witness statement and photo identification of Woźniak by witness Maciej Zoltek, an officer who prepared the juvenile detention report and identified Woźniak as the individual he processed in 2007. (ECF No. 1. pg. 91)

Collectively, this is abundant evidence of probable cause. The extradition request includes corroborating eyewitness statements from the group of people who were stopped at the house on the way to midnight mass, all of whom identified the man wearing the short-sleeve shirt as the attacker with the wooden bat; the corroborating eyewitness statements of the members of Woźniak's group, who all appeared to minimize their own involvement in some ways, but confirm it was Woźniak who was behaving aggressively, took the bat out of the car, and ran off wearing a distinctive short-sleeve shirt on a December night in Poland. Woźniak's friend Szymanski, who went to trial, was still reluctant to implicate Woźniak, but clarified that there was no one else around the victim when he was beaten until he collapsed, and Woźniak was the one holding the bat. Finally, Woźniak made admissions to one of the officers when he was first detained in Poland, admitting that he had participated in the beating. The beating was found by the medical examiner to be the direct cause of the death of the victim.

Accordingly, there is probable cause in the extradition request that Woźniak committed the crime charged.

## C. Extraditions Follow Unique Procedures

### 1. An Extradition Hearing Is Not a Criminal Proceeding

An extradition hearing is *sui generis*; its purpose is to decide the sufficiency of the charges under the Treaty, not to determine the guilt or innocence of the accused; that is for the foreign court. *See, e.g.*, *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901). Because of the limited nature of the hearing, special procedural and evidentiary rules apply.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings.[6] *Santos*, 830 F.3d at 992; *Balzan v. United States*, 702 F.3d 220, 224 (5th Cir. 2012) ("The evidentiary rules governing ordinary civil and criminal trials do not control what may be

---

[6] Fed. R. Crim. P. 1(a)(5)(A) states: "Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive." Fed. R. Evid. 1101(d)(3) provides: "These rules—except for those on privilege—do not apply to . . . miscellaneous proceedings such as extradition or rendition."

admitted in an extradition hearing. Under 18 U.S.C. § 3190, a properly authenticated document is admissible at such a hearing. Consequently, authenticated documents may serve as competent evidence in support of a magistrate's determination.") (citations omitted); *Sayne*, 418 F.2d at 685 (stating that "unique rules of wide latitude govern reception of evidence" in extradition hearings) (citation and internal quotation marks omitted).

The fugitive's right to present evidence at the extradition hearing is severely constrained, and his constitutional rights are limited. For example, the fugitive has no right to cross-examine witnesses or to confront his accusers, *see Ordinola*, 478 F.3d at 608; *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); and no Sixth Amendment right to a speedy extradition, *see McDonald v. Burrows*, 731 F.2d 294, 297 (5th Cir. 1984); *Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978). The exclusionary rule is inapplicable, *see Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980).

### 2. Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses

A certification of extradition may be, and typically is, based entirely on the authenticated documentary evidence and information that the government seeking extradition has provided. *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259-61 (7th Cir. 1993) (finding Swedish investigator's statement sufficient to establish probable cause); *Zanazanian v. United States*, 729 F.2d 624, 627-28 (9th Cir. 1984) (police report describing witness statements is competent evidence). The finding may rest upon written statements from a foreign prosecutor or judge summarizing the evidence. *See Rice v. Ames*, 180 U.S. 371, 375-76 (1901); *accord Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1911); *Garcia*, 825 F. Supp. 2d at 830 ("[E]xtradition may be predicated entirely on the 'unsworn statements of absent witnesses.'") (quoting *Collins*, 259 U.S. at 317).

Extradition treaties do not require, or even anticipate, live witness testimony at the hearing. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986). Requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." *Bingham*, 241 U.S. at 517. Further, hearsay evidence is admissible at an extradition hearing and may fully support the court's findings leading to a certification under Section 3184. *See Collins*, 259 U.S. at 317; *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977) (citing cases); *Haxhiaj*, 528 F.3d at 292

("[C]ourts have consistently concluded that hearsay is an acceptable basis for a probable cause determination in the extradition context. Unsworn statements can be sufficient to support a probable cause determination.") (citations omitted).

The Treaty and federal statute govern the nature and admissibility of evidence at an extradition hearing. The Treaty lists the submissions Poland must make in support of extradition. Treaty Art. 9. The Treaty also provides, "Documents that bear the certificate or seal of the Ministry or Department of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization." Treaty Art. 10. Here, as the Heinemann Declaration explains, the documents that Poland submitted to support its extradition request are admissible at the extradition hearing in accordance with Article 10(c). Heinemann Decl. ¶ 6, 3, ECF No. 1 pg. 127-28.

### 3. The Fugitive's Right to Present Evidence Is Very Limited

Due to the nature and limited purpose of an extradition hearing under 18 U.S.C. § 3184 and the importance of the United States' fulfilling its extradition treaty obligations, a fugitive's opportunity to challenge the evidence introduced against him is very circumscribed. A fugitive may not introduce evidence that contradicts the evidence the government submits on behalf of the requesting country, but may only introduce evidence explaining the submitted evidence. *See Charlton*, 229 U.S. at 457-58; *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005) (en banc); *Ordinola*, 478 F.3d at 608. A contrary rule "might compel the demanding government to produce all its evidence . . . both direct and rebutting, in order to meet the defense thus gathered from every quarter." *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)). Likewise, a fugitive may not introduce evidence that seeks to impeach the credibility of the requesting country's witnesses. *See Bovio*, 989 F.2d at 259; *see also Santos*, 830 F.3d at 993 ("[A]n individual contesting extradition may not, for example, present alibi evidence, facts contradicting the government's proof, or evidence of defenses like insanity, as this tends to call into question the credibility of the government's offer of proof.") (citations omitted). These matters, which require factual and credibility determinations, are for a foreign court to resolve at a trial.

/ / /

In addition, courts routinely reject technical and affirmative defenses in extradition proceedings. *See Bingham*, 241 U.S. at 517 (rejecting objections that "savor of technicality"); *Charlton*, 229 U.S. at 462; *Collins*, 259 U.S. at 316–17; *Hooker*, 573 F.2d at 1368 (noting that extradition court "properly may exclude evidence of alibi, or facts contradicting the government's proof, or of a defense such as insanity"); *Santos*, 830 F.3d at 993; *DeVazquez v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997), *cert. denied*, 525 U.S. 810 (1998).

#### 4. **Rule of Non-Inquiry**

Other than the sufficiency of the evidence, all matters that a fugitive may raise as defenses to extradition are to be considered by the Secretary of State, not by the court. *See* 18 U.S.C. §§ 3184, 3186. For example, Woźniak has previewed that he believes there are shortcomings in the Polish judicial system or with the Polish police that may prevent him from receiving a fair trial if he returns to Poland. ECF No. 19 pg. 8. These arguments relate to issues of fairness in a foreign justice system and not the requirements for certification; therefore, these arguments are for the Department of State, not this Court. *See, e.g., In re Extradition of Noeller*, No. 17-cr-664, 2017 WL 6462358, at *2 (N.D. Ill. Dec. 19, 2017); *Martin*, 993 F.2d at 829 (unlike courts, the Department "exercises broad discretion and may properly consider myriad factors" in extradition cases).

Moreover, the Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the requesting country. *See, e.g., Prasoprat*, 421 F.3d at 1016; *Escobedo*, 623 F.2d at 1105. This is consistent with the long-held understanding that deciding whether to surrender a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State" within the executive's powers to conduct foreign affairs. *In re Kaine*, 55 U.S. 103, 110 (1852). Similarly, a fugitive's contention that the extradition request is politically motivated or that the requesting state's justice system is unfair should be addressed by the Secretary of State, not the court. *Koskotas*, 931 F.2d at 173–74 (noting that requesting state's motives are for executive branch to consider).

/ / /

/ / /

/ / /

### III.    <u>CONCLUSION</u>

WHEREFORE, the United States respectfully requests that at the June 23, 2022 extradition hearing the Court find that, pursuant to 18 U.S.C. § 3184, the evidence presented is sufficient to sustain the charges under the provisions of the Treaty and to certify Woźniak's extradition to Poland.

Dated:  May 9, 2022

PHILLIP A. TALBERT
United States Attorney

By:    /s/ AUDREY B. HEMESATH
AUDREY B. HEMESATH
Assistant United States Attorney