UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br>DAWID TOMASZ WOŹNIAK<br>TO THE REPUBLIC OF POLAND | No. 2:22–mj–28–KJN<br><br>ORDER AND CERTIFICATION OF EXTRADITABILITY |

The Government filed a complaint in this matter seeking the extradition of Dawid Tomasz Woźniak at the request of and pursuant to a treaty with the Republic of Poland. (ECF No. 1.) The Government contends: the undersigned is authorized to conduct the extradition proceeding; the court has jurisdiction over Woźniak; the relevant treaty is in full force and effect; the charged crime (causing grievous bodily harm resulting in death) is covered by that treaty; and sufficient evidence exists to support a finding of probable cause on the charge. (ECF Nos. 5, 27.)

Woźniak opposed extradition. He does not contest the first four elements but contends: (I) the evidence submitted with the extradition request is insufficient to support a finding of probable cause; and (II) he is being improperly prosecuted as an adult, as he was 16 years old at the time of the events and the Polish courts did not follow Polish law. (ECF No. 28.)

The Government replied that (I) the extradition request contains ample probable cause; and (II) the court is not equipped to opine on Poland's decision to charge Woźniak as an adult, as this is (at best) a consideration for the Secretary of State. (ECF No. 29.)

For the reasons set forth herein and explained at the June 23, 2022 hearing, the court finds that Woźniak is certified to be extradited to Poland.

1

**Allegations in the Extradition Papers; Procedural Posture**

On December 24, 2007, Woźniak, who was 16 years old at the time, had been drinking alcohol with his friends Szymanski, Kozlowski, and others. That evening, Kozlowski drove his car with Woźniak to Grudusk, Poland, while Szymanski drove with another friend. At 11:00 p.m., they stopped in a parking lot near a shopping center in Grudusk. Woźniak, who was wearing a short-sleeved t-shirt, exited the car and grabbed a wooden stick (approx. 23 inches long, 2 inches in diameter) from the trunk. Woźniak approached another car in which a man was sitting, opened the man's car door, and began dragging him out, but Kozlowski pulled Woźniak away. Woźniak then moved towards a nearby stadium, with only Szymanski following. They approached two individuals standing outside, and Woźniak hit one of them in the back with the wooden stick while Szymanski repeatedly punched and kicked the man. During this beating, Andrzej Malinowski (the victim named in the charge) walked by and asked Woźniak and Szymanski what they wanted from the person. Woźniak and Szymanski then approached Malinowski, at which point Woźniak hit him in the head with the wooden stick while Szymanski punched and kicked him. Malinowski fell onto his back, and Woźniak and Szymanski ran back to their other friends waiting by the cars. Woźniak got into Kozlowski's car, Szymanski got into the other car, and they all drove away from Grudusk.

Two individuals helped Malinowski walk home. He then went to the hospital, where the doctors discovered that he had sustained an extensive left side subdural hematoma over the entire hemisphere of the brain, among other serious injuries. Malinowski died a week later due to an acute breathing and circulation failure resulting from the injuries to his skull and brain. Those injuries had led to intracranial hypertension syndrome and swelling of the brain, which caused general encephalomalacia and irreversible destruction of the nervous centers. The shape and location of the head injury indicated it was due to a single blow with a hard, oblong, oval object. No trace evidence originating from Woźniak was found on the stick, but multiple witnesses stated Woźniak was wearing a short-sleeved t-shirt and other witnesses linked him to the wooden stick.

Woźniak was detained as a juvenile, then released, and a month later a Polish court determined he should be tried as an adult. In July 2008, Szymanski was convicted for his part in

the events.  In March of 2009, Polish authorities issued an arrest warrant for Woźniak, who had moved to Modesto, California.  On September 1, 2011, Poland requested Woźniak be extradited, but due to delays and deficiencies in the request, the extradition complaint in this court was not filed until February 17, 2022.  (ECF No. 1.)  Woźniak was arrested and remains detained pending the outcome of these extradition proceedings.  (ECF Nos. 8, 26.)

**Legal Standards**

"Extradition from the United States is a diplomatic process [] initiated by a request from the nation seeking extradition directly to the Department of State."  Prasoprat v. Benov, 421 F.3d 1009, 1012 (9th Cir. 2005); see Factor v. Laubenheimer, 290 U.S. 276, 287 (1933) ("[T]he principles of international law recognize no right to extradition apart from treaty."); see also Quinn v. Robinson, 783 F.2d 776, 782 (9th Cir. 1986) ("The right of a foreign sovereign to demand and obtain extradition of an accused criminal is created by treaty.").  If the State Department determines the extradition request falls within the treaty, a United States Attorney files a complaint in the district court seeking an arrest warrant for the extraditee.  Id.; Santos v. Thomas, 830 F.3d 987, 991 (9th Cir. 2016).

Under 18 U.S.C. § 3184, any magistrate judge authorized to do so by a court of the United States may "conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation, and to issue a certification of extraditability to the Secretary of State."  In re Extradition of Santos, 795 F. Supp. 2d 966, 969 (C.D. Cal. 2011); see also Local Rule 302(b)(8) (referring all extradition proceedings to magistrate judges).  The court has limited authority in the overall process of extradition, as "[e]xtradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function."  Vo v. Benov, 447 F.3d 1235, 1237 (9th Cir. 2006); see also Wright v. Henkel, 190 U.S. 40, 57 (1903) ("Treaties must receive a fair interpretation, according to the intention of the contracting parties, and so as to carry out their manifest purpose."); Santos, 795 F. Supp. 2d at 970 ("Extradition treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their alleged offenses.") (quoting Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 14 (1936)).

In the extradition hearing, there are no discretionary decisions for the court to make. Prasoprat, 421 F.3d at 1012. The court does not consider whether the extraditee is guilty, but merely whether competent legal evidence would justify holding the individual for trial. Collins v. Loisel, 259 U.S. 309, 315-16 (1922); see also Fernandez v. Phillips, 268 U.S. 311, 312 (1925) ("Competent evidence to establish probable cause is not necessarily evidence competent to convict."). If the court "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . ., [it] shall certify the same, together with a copy of all the testimony taken before [it] . . . ." 18 U.S.C. § 3184; see Santos, 830 F.3d at 992 ("So long as the judicial officer determines that there is probable cause, he is required to certify the individual as extraditable to the Secretary of State."). The Secretary of State retains the discretion to determine whether the individual will actually be surrendered. Prasoprat, 421 F.3d at 1012.

**Analysis**

In deciding whether to grant a request for a certificate of extradition, the court considers whether: (1) the extradition judge has jurisdiction to conduct proceedings; (2) the extradition court has jurisdiction over the fugitive; (3) the extradition treaty was in full force and effect; (4) the crime fell within the terms of the treaty; and (5) there was competent legal evidence to support an extradition finding. Zanazanian v. U.S., 729 F.2d 624, 626 (9th Cir. 1984).

The U.S. contends all five considerations are met, and Woźniak does not contest the first four considerations. (ECF Nos. 27, 28.) The court finds: (1) the undersigned has jurisdiction to conduct the proceedings (18 U.S.C. § 3184; Local Rule 302(b)(8)); (2) the court has jurisdiction over Woźniak because he was arrested within the court's boundaries (see, e.g., In re Extradition of Camelo-Grillo, 2017 WL 2945715, at *5 (C.D. Cal. July 10, 2017)); (3) the extradition treaty between the U.S. and Poland is in effect (see ECF No. 1 at 127 ¶ 2 (decl. Heinemann, State Dept. legal adviser); id. at 133-49 (the Treaty provisions[1])); and (4) the charged crime falls within the scope of this Treaty (see id. at 128 ¶ 5). The court turns to Woźniak's arguments.

---

[1] The Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., July 10, 1996; the Agreement Between the United States of America and the Republic of Poland on the application of the Extradition Treaty Between the United States of America and the Republic of Poland signed 10 July 1996, U.S.-Pol., June 9, 2006.

### I. Probable Cause Regarding Evidence of the Alleged Assault

"Foreign states requesting extradition are not required to litigate their criminal cases in American courts." Santos, 830 F.3d at 991. Instead, the function of the court in an extradition proceeding is to "determine whether there is any evidence sufficient to establish reasonable or probable cause." U.S. ex rel Sakaguchi v. Kaulukukui, 520 Fed. 2d 726, 730-31 (9th Cir. 1975). The probable cause inquiry asks whether there is "a reasonable ground to believe the accused guilty." Mirchandani v. United States, 836 F.2d 1223, 1226 (9th Cir. 1988) (citations omitted); see also Garcia v. Cty. of Merced, 639 F.3d 1206, 1209 (9th Cir. 2011) (noting probable cause equates to a "fair probability" that the suspect has committed the charged crime).

Evidence in support of an extradition request need not be admissible at a later trial. See Then v. Melendez, 92 F.3d 851, 855 (9th Cir. 1996) (noting that rules of evidence do not apply in extradition context). To this end, courts have held that extradition requests can be supported by hearsay, id., self-incriminating statements of accomplices, Zanazanian, 729 F.2d at 627, and summaries of witness statements composed by police officers or prosecutors, id. at 628; Emami v. U.S. Dist. Ct. for N. Dist. of California, 834 F.2d 1444, 1451 (9th Cir. 1987). However, the court may consider credibility of proffered evidence and weight to give it. See Quinn, 783 F.2d at 815. The burden of demonstrating probable cause rests with the extraditing country, via the Government's submissions. Then, 92 F.3d at 855.

Here, Woźniak has been charged with "causing grievous bodily harm resulting in death" under Polish law. Specifically, Section 1 of Article 156 of the Polish Penal Code makes it illegal for a person to "cause[] grave detriment to health in the form of: (1) deprivation of a person of sight, hearing, speech, ability to reproduce, [or] (2) other grave handicap, grave incurable or long-lasting illness, illness posing a real threat to life, enduring incapability to work in profession or enduring, material disfiguration or deformation of the body . . . ." (ECF No. 1 at 48.) If the above conduct result in the victim's death, the potential penalty of imprisonment is between 2 and 12 years. (Id. at 49, Criminal Code of Poland, Article 156, Section 3).)

In support of a probable cause argument, the U.S. submitted the numerous pieces of evidence proffered from Polish authorities. The U.S. cites to the statement of the Polish

prosecutor (ECF No. 1 at 34-39), who summarized the following relevant evidence:

- Summary of Statement of witness Szymon Rutkowski:

    He stated that he had come to Grudusk on 24th December 2007 more or less at 23:47 hours. He met with Ewelina Rudnicka, Karolina Rudnicka and Katarzyna Grodecka. When he was standing with Karolina Rudnicka and Katarzyna Grodecka in front of Ewelina Rudnicka's house, two men ran over to him. One of them was wearing a light short-sleeve shirt. Szymon Rutkowski knew one of the attackers, Marek Szymanski. Szymon Rutkowski was immediately hit with a wooden stick by one of them, was beaten with hands and kicked by the other perpetrator. Katarzyna Grodecka and Karolina Rudnicka ran away. Andrzej Malinowski, who was passing by, saw this and said to the attackers "what do you want from him?" Then the two men who had assaulted Szymon Rutkowski ran over to Andrzej Malinowski and started hitting him with the wooden stick in his head and kicking him all over his body. During the beating Andrzej Malinowski fell down. Then the perpetrators ran away.

- Summary of Statement of co-assailant Marek Szymanski:

    He stated that Dawid Tomasz Woźniak had taken part in the beating of Szymon Rutkowski, whom he was hitting with a wooden stick, and then saw him holding the wooden stick and standing above the lying man. He . . . stated that he was hitting Szymon Rutkowski with a stick together with Dawid Tomasz Woźniak and directly afterwards saw Dawid Tomasz Woźniak holding the wooden stick and standing above the lying man. He explained that only Dawid Tomasz Woźniak was using the wooden stick.

- Summary of Statement of witness Ewelina Rudnicka:

    When she came out of her house on the night of December 24, she saw two men running over to Andrzej Malinowski, who had earlier reprimanded them by saying "What are you doing, leave him alone." The two men started beating Andrzej Malinowski. One of the attackers was heating (sic) him with a baseball bat. After a blow Andrzej Malinowski fell down on the pavement, and the attackers ran away.

    ***

    At the trial of Szymanski, Rudnicka testified that she was not able to indicate which of the two men was beating Andrzej Malinowski with the bat. She added that one of the attackers was wearing a short-sleeve shirt.

- Summary of Statement of witness Karolina Rudnicka:

    She stated that she was standing next to her house in Grudusk together with Szymon Rutkowski and Katarzyna Grodecka. Two men approached them. One of them was wearing only a short-sleeve shirt and was holding a baseball bat. The men beat up

6

|   |   |
|---|---|
| 1 | Szymon Rutkowski and then ran over to Andrzej Malinowski. The boy wearing the short sleeve shirt was hitting Andrzej Malinowski with the bat in the head. After the blows, Andrzej Malinowski fell down on the pavement . . . . [She] later stated again that the bat was held by the man dressed in the short-sleeve shirt. |

- Summary of Statement of witness Katarzyna Grodecka:

    She stated that at about 23:45 hours on 24th December 2007 she and Karolina Rudnicka, Ewelina Rudnicka and Szymon Rutkowski were going to the Midnight Mass to the church in Grudusk. They stopped in front of Ewelina Rudnicka's house, who went in to get her scarf. Two men ran over to them. One of them was wearing a short-sleeve shirt and holding a wooden stick. Then Katarzyna Grodecka ran away. Later she noticed a man lying on the road.

- Summary of Statement of Mariusz Kozlowski:

    He stated that he had come to Grudusk together with Dawid Tomasz Woźniak and Arkadiusz Bonislawski by car. Piotr Chmielewski and Marek Szymanski came by another car. Dawid Tomasz Woźniak came out of the car and started behaving aggressively. He wanted to pull out an elderly man from another car standing at the parking place. Mariusz Kozlowski pulled him away from the man, but Dawid Tomasz Woźniak took a wooden stick from Piotr Chmielewski's car and ran in the direction of the bridge. When he ran away with the bridge, he was wearing just a short-sleeve shirt. Marek Szymanski ran together with him. Since they were not coming back, Mariusz Kozlowski and Piotr Chmielewski went by their cars to another place. However, soon Dawid Tomasz Woźniak ran up and got into Mariusz Kozlowski's car, and Marek Szymanski got into the car of Piotr Chmielewski. Dawid Tomasz Woźniak got into the car with a wooden stick, he was wearing a short-sleeve shirt.

- Summary of Statement of Piotr Chmielewski:

    He stated that he had come to Grudusk together with Dawid Tomasz Woźniak, Marek Szymanski, Arkadiusz Bonislawski and Mariusz Kozlowski. Dawid Tomasz Woźniak was behaving aggressively. He was holding a stick in his hands. He ran somewhere, and Marek Szymanski ran with him.

- Summary of Statement of Arkadiusz Bonislawski:

    He stated that he went by car to several places together with Dawid Tomasz Woźniak, Marek Szymanski, Piotr Chmielewski and Mariusz Kozlowski. They were drinking alcohol together. Arkadiusz Bonislawski did not remember what had been happening. He stated that he had fallen asleep in the car.

- Summary of Statement of the Medical Examiner:

    According to the medical opinion, the direct cause of Andrzej Malinowski's death was an acute circulation and breathing failure

7

    resulting from an injury of the skull and brain. It led to intracranial hypertension syndrome and swelling of the brain and as a consequence to intracranial cerebral hypertension syndrome a few days before. The shape and the location of the superficial changes indicates that they occurred as a consequence of a single blow with a hard, oblong, oval object. This tool could be the stick the photograph of which can be found in the files of the case.

- Summary of the physical evidence:

    A material piece of evidence, a stick 59 cm long and with a diameter of 5 cm, which Dawid Tomasz Woźniak was using, has been secured in the case against Marek Szymanski. The District Court in Plock awarded seizure of this piece of evidence in the matter, reference number II K 44/08. It has not been found out during the investigation that any traces originating from Dawid Tomasz Woźniak were found on this piece of evidence.

In addition, the extradition request contains the following witness statements:

- Marek Szymanski, Woźniak's childhood friend, who stated (ECF No. 1 at 93-95):

    On the day of the incident I went with him to Grudusk. We parked the car at a shop in Grudusk. I drove with Chmielewski and Dawid Woźniak with Kozlowski. I saw how Dawid took some club out of the car and ran towards the stadium. I ran after Dawid Woźniak. I remember that I saw Dawid Woźniak struggling with some guy. I ran and the punched that boy in the face. He sat down on the stone wall and covered his head with hands. Now I do not remember if Dawid Woźniak beat the boy with the club. I went up to him and asked where he is from. He replied that he was from Kamien. At that time, I saw how Dawid Woźniak runs from the first boy. As I turned around I saw a man lying and Dawid Woźniak was behind him. I do not remember if I saw that Dawid Woźniak hitting him with a wooden club. When I passed by this man, he lay motionless. I did not hit him. Only Dawid had a wooden club. At the time when the latter victim fell I did not see any other persons near him except Dawid Woźniak. I clearly saw Dawid Woźniak by the second victim.

- Mariusz Kozlowski, Woźniak's childhood friend, who stated (id. at 105-07):

    On the day of the incident I went along with him to Grudusk. Dawid Woźniak took out of my car a big stick and went somewhere. I guess Szymanski went after him. I have not seen Dawid Woźniak hitting other persons with the club. Dawid came to my car. He probably had that club. He did not tell me what happened. I remember that he was under the influence of alcohol. Earlier I saw him drinking vodka.

- Wieslaw Olszewski, a police officer who interrogated Woźniak the day after the alleged assault, who stated (id. at 97-99):

    [Woźniak] was the youngest of the group of persons involved in the

>    incident. He was the most active and aggressive perpetrator.
>
>    ***
>
>    It reminds me that Dawid Woźniak admitted to participating in the battery of one of the victims, and then to participating in the beating of another victim. During the incident Woźniak had a baseball bat, by which he stroked the victims.

- Maciej Zoltek, a police officer who identified Woźniak for these proceedings, and who prepared Woźniak's juvenile detention report after the Malinowski assault (id. at 89-91).[2]

Woźniak does not challenge the authenticity of any of this evidence. The court finds the above evidence properly authenticated pursuant to 18 U.S.C. § 3190.

Woźniak's probable-cause arguments concerning all of the above-summarized evidence appear to be of two prongs. Primarily, Woźniak contends the "balance of [each] statement" fails to contribute to the finding of probable cause seemingly because no single piece of evidence definitively identifies Woźniak as the assailant. Specifically, Woźniak notes (1) the statements by Rutkowski, both Rudnickas, and Grodecka lack any physical descriptions of the assailant, only generally referring to "two men," "one" of whom wore a "light short-sleeve shirt"; (2) Szymanski's statement fails to specify which "incident" he means, and could pertain to the apparent assault on Rutkowski; (3) the statements by both Rudnickas characterize the wooden stick as a "baseball bat"; (4) statements by Kozlowski, Chmielewski, and Bonislawski don't discuss the actual assault on Malinowski, but instead refer to events that took place prior to or after the assault; (5) Wlodzimierz Woźniak states he only heard about the assault later; and (6) statements by Officers Olszewski and Zoltek didn't specifically reference the assault on Malinowski. Woźniak also argues the medical examiner's report has no bearing on the identity of the assailant, and the prosecutor's statement about the wooden stick should be disregarded because it cannot be directly linked to Woźniak.

///

---

[2] Also contained in the exhibits were three declarations from individuals identifying Woźniak for these proceedings: Dorota Woźniak (Woźniak's mother) (ECF No. 1 at 52); Elizbieta Redwanowska (a neighborhood acquaintance) (id. at 101-03); and Wlodzimierz Woźniak (Woźniak's Uncle) (id. at 109-11).

Woźniak's arguments here are unpersuasive for the simple fact that probable cause is based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). True, Polish authorities may not have retrieved Woźniak's DNA from the wooden stick, nor have a single witness who would testify to all of Woźniak's alleged actions on the night Malinowski was assaulted. But on the totality, these statements raise a "fair probability" Woźniak was the assailant. Garcia, 639 F. 3d at 1209. They indicate Woźniak was driven to Grudusk, was intoxicated, was wearing a short-sleeved shirt in the middle of winter in Poland, exited Kozlowski's car, carried a wooden stick, acted aggressively toward an elderly man, ran away from his friends with Szymanski in tow, acted aggressively toward Rutkowski, and was seen standing near Malinowski still holding the wooden stick while Malinowski lay on the ground. Each witnesses' perspective adds to a picture of the events and leaves the undersigned with "a reasonable ground to believe" Woźniak is the person who assaulted Malinowski on the night in question. Mirchandani, 836 F.2d at 1226. Multiple witnesses confirmed Woźniak's identity with photographs of him as a child and as an adult. (See, e.g., ECF No. 1 at 39). While the medical examiner's report does not identify Woźniak, it certainly speaks to whether the clubbing of Malinowski in the head with a wooden stick resulted in death, as required for a charge to lie under Article 156, Section 3 of the Criminal Code of Poland. To the extent Woźniak attempts to challenge these witnesses' credibility, this is beyond the scope of the court's inquiry, as challenges of this nature are left to the Polish trial court. See Quinn, 783 F.2d at 817. Thus, the undersigned rejects Woźniak's "balance of the statement" challenges.

Woźniak also focuses on certain witnesses' statements concerning other apparent assaults just prior to when Woźniak allegedly beat Malinowski. Woźniak argues these portions of the witnesses' statements should be stricken from the record under the "rule of specialty" because Woźniak has not been charged with an assault on anyone other than Malinowski. (See ECF No. 1 at 146 (Article 19(1), stating that a person extradited under the Treaty may not be detained, tried, or punished for an offense committed prior to extradition other than that for which extradition has been granted).). However, the court notes that just because Poland has not charged Woźniak with any other assaults does not mean the statements are wholly irrelevant to the alleged assault on

Malinowski. Kozlowski's statement about Woźniak attempting to pull an elderly man out of a vehicle establishes a timeline between when Woźniak got out of Kozlowski's car, first apparently moved toward the elderly man and then, after being pulled away, grabbed the wooden stick and ran off with Szymanski. Rutkowski's statement about his own beating put two men in the area of Malinowski, noted one wore a light short-sleeve shirt, held a wooden stick, and was acting aggressively (by allegedly beating both Rutkowski and Malinowski). Szymanski's discussion of the apparent assault on Rutkowski puts the wooden stick in Woźniak's hands during that segment as well as after the Malinowski assault. Nowhere does the undersigned see Poland attempting to extradite Woźniak for any action aside from the assault on Malinowski. (See ECF No. 1 at 39 (the Polish prosecutor's statement that Woźniak "will not be held liable for any other crime than stated in this request . . . .").) Nothing in the rule of specialty requires wholesale exclusion of competent evidence concerning the charged crime (even if other uncharged crimes may be evident from those same facts). See Quinn, 783 F.2d at 783 (noting the doctrine of "specialty" prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite). For these reasons, the undersigned rejects Woźniak's challenges based on the rule of specialty.

**II.   Woźniak's Age at the Time of the Alleged Assault**

Woźniak's second argument concerns Poland's intent to try him as an adult despite the fact that he was 16 at the time of the assault. He heavily relies on a February 18, 2008 statement from the Polish prosecutor (ECF No. 28-2), who received the February 11, 2008 order from the Polish court to prosecute Woźniak as an adult. (See ECF No. 1 at 47 (Polish Penal Code, Article 10 § 2, allowing for prosecution as an adult of a juvenile 15 years or order "if the circumstances of the case and the mental state of development of the perpetrator, his characteristics and personal situation warrant it, and especially when previously applied educational or corrective measures have proved ineffective").) The prosecutor appears to have disagreed with the court's decision, arguing the order lacked a detailed discussion of the circumstances of the case. (See ECF No. 1 at 50-51 (noting that under Article 42 of the Polish Penal Code, an assessment of a case is required prior to explanatory proceedings justifying the charging of a minor as an adult).) The

prosecutor also appears to challenge the strength of the evidence against Woźniak, noting "other evidence did not unequivocally verify the minor's account." (ECF No. 28-2 at 3.)

Accepting the authenticity of the prosecutor's statement and related summary (ECF Nos. 28-1 and -2) and setting aside the fact that the Polish court appears to have rejected on appeal the prosecutor's contentions (see ECF No. 28-1 at 3), the undersigned is ill-equipped to opine on the operation of Polish law. Woźniak essentially asks the court to overrule the Polish court's orders that Woźniak be tried as an adult, which is unwise at best. Emami, 834 F.2d at 1449 (refraining from entangling the court in arguments concerning whether the foreign court followed its own procedural requirements "out of respect for [that country's] sovereignty and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles"); see, e.g., Skaftouros v. U.S., 667 F.3d 144, 156 (2d Cir. 2011) ("U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty.") (citing U.S. ex rel. Petrushansky v. Marasco, 325 F.2d 562, 565 (2d Cir. 1963) (Thurgood Marshall, J.) (noting the role of a U.S. court is "limited to ensuring that the applicable provisions of the treaty and the governing American statutes are complied with.")). Further, to the extent Woźniak argues the prosecutor's statement "obliterates" probable cause, this argument is unpersuasive given the plethora of evidence cited in Section I above. Santos, 830 F.3d at 992. ("[E]xplanatory evidence is evidence that explains away or completely obliterates probable cause, whereas contradictory evidence is that which "merely controverts the existence of probable cause or raises a defense."). Woźniak is free to raise this argument with the Secretary of State, who is in a much better position to opine on any such humanitarian claim. See, e.g., In re Extradition of Noeller, 2017 WL 6462358, at *2 (N.D. Ill. Dec. 19, 2017) (noting that the rule of non-inquiry requires the Secretary of State, and not the court, to review any claims that a "requesting state's justice system is unfair") (citing Prasoprat, 421 F.3d at 1016; Quinn, 783 F.2d at 789).

///

///

**ORDER**

For the reasons stated above, the court finds that the evidence presented is sufficient to sustain the charge and the requirements for certification have been met. It is hereby ORDERED that the U.S.'s request for certification of extradition (ECF Nos. 1 & 27) is GRANTED. The court furnishes the certification to the Secretary, together with a copy of the evidence and a transcript of any testimony presented at the hearing. Woźniak shall remain committed to the custody of the United States Marshal to await the Secretary's final determination regarding surrender.

Dated: June 27, 2022

SD, wozn.28

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE